Denise CURRIE, Betty Meinhardt, and Linda Sorenson,
Petitioners-Appellants, †

v.

STATE OF WISCONSIN DEPARTMENT OF INDUSTRY, LABOR &
HUMAN RELATIONS, EQUAL RIGHTS DIVISION,
Respondent-Respondent.

Court of Appeals

*No. 96–1720. Submitted on briefs January 16, 1997.—Decided
April 24, 1997.*

(Also reported in 565 N.W.2d 253.)

† Petition to review denied.

For the petitioners-appellants the cause was submitted on the briefs of *John S. Williamson, Jr.* of Appleton.

■■■■■■■■■■

For the respondent-respondent the cause was submitted on the brief of *James E. Doyle,* attorney general, and *David C. Rice,* assistant attorney general.

Before Vergeront, Roggensack and Deininger, JJ.

ROGGENSACK, J. Denise Currie, Betty Meinhardt and Linda Sorenson appeal a circuit court order affirming a Labor and Industry Review Commission (LIRC) decision which dismissed their claims of gender and age discrimination against their former employer. The employees argue that once they established a *prima facie* case of discrimination, the burden of persuasion should have shifted to their employer to establish that its actions were not motivated by a discriminatory purpose. They further contend that the evidence was insufficient to support findings of nondiscriminatory purpose in their cases. However, we conclude that LIRC reasonably determined that a *prima facie* case of discrimination shifts only the burden of production to the employer, and that there was credible and substantial evidence to support LIRC's finding that the employees were terminated for nondiscriminatory reasons. Accordingly, we affirm the order of the trial court.

## BACKGROUND

Linda Sorenson, Betty Meinhardt and Denise Currie all worked at a gas station convenience store owned by the Garrow Oil Corporation, in Friendship, Wisconsin. Sorenson was the store manager; Meinhardt was the assistant manager; and Currie was a part-time clerk.

In May of 1991, Garrow Oil hired Dan Davis as the operations manager for its chain of Wisconsin stores.

His primary responsibility was to make the stores more profitable by controlling the amount of money being lost due to "shrinkage," that is, the loss of inventory due to theft or poor inventory control. In order to attempt to correct the problem, Davis set a maximum level of acceptable shrinkage, and initiated a monthly bonus program for managers and assistant managers, which was linked to improving the shrinkage levels at their stores.

The Friendship store had a significant shrinkage problem. Between September of 1991 and March of 1992 the store lost $5,476.92 in inventory, exceeding the acceptable shrinkage level set by Davis by $2,634.76. Davis repeatedly discussed the shrinkage problem with Sorenson, but the situation did not improve. Finally, on April 8, 1992, Davis fired all of the employees[1] at the Friendship store, and replaced them with two male managers and new staff.

On October 14, 1992, Sorenson, Meinhardt and Currie each filed a complaint with the Equal Rights Division of the Department of Industry, Labor and Human Relations (DILHR),[2] alleging that Garrow Oil had violated the Wisconsin Fair Employment Act (WFEA) §§ 111.31 to 111.395, STATS., by terminating her employment because of her gender, and in Sorenson's case, also her age.[3] The cases were consolidated for a hearing held on January 26, 1994 before an administrative law judge (ALJ).

---

[1] All of the store's employees were women, with the exception of Sorenson's son.

[2] DILHR has since been renamed the Department of Workforce Development.

[3] Sorenson was born on July, 15, 1951, and was 40 years old when her employment was terminated.

The bases for the employees' complaints were a number of statements derogatory to women which Davis had made to various employees. For instance, at one point Davis had commented to Sorenson and Meinhardt that Garrow Oil should hire young, good-looking women to help business. On another occasion, he told an employee of another store that he thought men made better managers than women. However, the ALJ found that, despite the *prima facie* case against Garrow Oil, all three employees had failed to prove that they had been discriminated against on the basis of gender or age, noting that they had failed to produce evidence regarding Garrow Oil's treatment of male managers with similar shrinkage problems or other subordinates whose managers were fired.

LIRC adopted the ALJ's findings and affirmed his decision. In reaching its decision, LIRC, by adopting the ALJ's decision, emphasized that the burden of proving discrimination remains at all times with the employee. The circuit court for Adams County affirmed LIRC's determination, and the employees now appeal the trial court's order dismissing their complaints.

## DISCUSSION

**Standard of Review.**

This court reviews LIRC's decision rather than that of the circuit court. *Stafford Trucking, Inc. v. DILHR*, 102 Wis. 2d 256, 260, 306 N.W.2d 79, 82 (Ct. App. 1981). An employer's motivation is a factual determination. *St. Joseph's Hospital v. Wisconsin Employment Relations Bd.*, 264 Wis. 396, 401, 59 N.W.2d 448, 451 (1953). LIRC's factual findings must be upheld on review if there is any credible and sub-

stantial evidence in the record upon which reasonable persons could rely to make the same findings. *See Princess House, Inc. v. DILHR*, 111 Wis. 2d 46, 54–55, 330 N.W.2d 169, 173–74 (1983); § 227.57(6), STATS. A reviewing court may not substitute its judgment for that of the agency as to the weight or credibility of the evidence on any finding of fact. *See Advance Die Casting Co. v. LIRC*, 154 Wis. 2d 239, 249, 453 N.W.2d 487, 491 (1989); § 227.57(6). Rather, it must examine the record for credible and substantial evidence which supports the agency's determination.

The party seeking relief through judicial process bears the burden of proof. *See Loeb v. Board of Regents of Univ. of Wis.*, 29 Wis. 2d 159, 164, 138 N.W.2d 227, 230 (1965). Determinations of who has the ultimate burden of proof and whether that party has satisfied the requisite burden of proof are questions of law. *See State v. Hanson*, 98 Wis. 2d 80, 85–90, 295 N.W.2d 209, 213–15 (Ct. App. 1980). On review of an administrative agency's decision, a court is not bound by the agency's conclusion of law. *West Bend Educ. Ass'n v. WERC*, 121 Wis. 2d 1, 11, 357 N.W.2d 534, 539 (1984). However, it may defer to its determination.

The supreme court has recently clarified both when to defer to an agency's legal conclusion, and how much deference the courts should give. *UFE, Inc. v. LIRC*, 201 Wis. 2d 274, 284, 548 N.W.2d 57, 61 (1996) (citations omitted). An agency's interpretation or application of a statute may be accorded great weight deference, due weight deference or *de novo* review. *Id.* at 284, 548 N.W.2d at 61. We will accord great weight deference only when all four of the following requirements are met: (1) the agency was charged by the

legislature with the duty of administering the statute; (2) the interpretation of the agency is one of long-standing; (3) the agency employed its expertise or specialized knowledge in forming the interpretation; and (4) the agency's interpretation will provide uniformity and consistency in the application of the statute. *Id.* (citing *Harnischfeger Corp. v. LIRC*, 196 Wis. 2d 650, 660, 539 N.W.2d 98, 102 (1995)). Under the great weight standard, "a court will uphold an agency's reasonable interpretation that is not contrary to the clear meaning of the statute, even if the court feels that an alternative interpretation is more reasonable." *UFE*, 201 Wis. 2d at 287, 548 N.W.2d at 62.

We will accord due weight deference when "the agency has some experience in an area, but has not developed the expertise which necessarily places it in a better position to make judgments regarding the interpretation of the statute than a court." *Id.* at 286, 548 N.W.2d at 62. The deference allowed an administrative agency under due weight review is accorded largely because the legislature has charged the agency with the enforcement of the statute in question. *Id.* Under this standard, we will not overturn a reasonable agency decision that furthers the purpose of the statute unless we determine that there is a more reasonable interpretation under the applicable facts than that made by the agency. *Id.* Finally, we will employ *de novo* review when the legal conclusion made by the agency is one of first impression, or when the agency's position on the statute has been so inconsistent as to provide no real guidance. *Id.* (citations omitted).

After careful consideration, we conclude that LIR C's determination of the effect of § 903.01, STATS., on an

employer's burden of proof in state employment discrimination cases is entitled to due deference. The agency has been charged by the legislature with the duty of administering Wisconsin's Fair Employment Act, and has at least once before considered the precise issue of whether a *prima facie* case of discrimination in a WFEA action raises a burden-of-persuasion-shifting presumption under § 903.01. Section 111.375, STATS.; *Franklin v. Foxboro Co.* (LIRC, Nov. 16, 1994). Furthermore, although the agency's overt interpretation of § 903.01 as it pertains to WFEA may not be one of long-standing, deferring to its legal conclusion that, notwithstanding § 903.01, the complainant maintains the burden of proving discrimination in state WFEA cases, has the benefit of providing uniformity and consistency with long-standing precedent to that effect. *See Puetz Motor Sales, Inc. v. LIRC,* 126 Wis. 2d 168, 376 N.W.2d 372 (Ct. App. 1985); *Kovalic v. DEC Int'l, Inc.,* 161 Wis. 2d 863, 875, 469 N.W.2d 224 229 (Ct. App. 1991).

**Burden of Persuasion.**

The WFEA does not establish any specific procedures for a complainant to follow in order to prove a case of employment discrimination. *Puetz Motor Sales,* 126 Wis. 2d at 172, 376 N.W.2d at 374. Due to the similarity between the WFEA and Title VII of the Civil Rights Act, federal decisions may provide guidance in applying the state fair employment law. *Cf.* §§ 111.31–111.395, STATS., *with* 42 U.S.C. § 2000e. Specifically, in *Puetz Motor Sales,* we adopted the federal framework for allocating burdens and the order of presentation of proof in state discrimination suits. *Id.* A Title VII case proceeds as follows:

First, the plaintiff has the burden of proving by the preponderance of the evidence a *prima facie* case of discrimination.[4] Second, if the plaintiff succeeds in proving the *prima facie* case, the burden shifts to the defendant to articulate some legitimate, nondiscriminatory reason for the employee's rejection. Third, should the defendant carry this burden, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination.

*Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 252–53 (1981) (citations omitted). Thus, the establishment of a *prima facie* case under federal case law "creates a presumption that the employer unlawfully discriminated against the employee." *Id.* at 254. The burden which shifts to the employer under this scheme is to rebut the presumption of discrimination by producing evidence sufficient to raise a genuine issue of fact as to whether it discriminated against the employee. *Id.* In other words, the employer carries a burden of production, not of persuasion, in Title VII cases. "The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Id.* at 253.

The Wisconsin cases which have followed the federal framework for the establishment of a *prima facie*

---

[4] In order to make a *prima facie* case of discriminatory discharge, a complainant must show that (1) he was a member of a protected class, (2) he was discharged, (3) he was qualified for the job, and (4) either he was replaced by someone not within the protected class or others not in the protected class were treated more favorably. *Puetz Motor Sales*, 126 Wis. 2d 168, 173, 376 N.W.2d 372, 374–75 (Ct. App. 1985).

discrimination case have also expressly noted that "the ultimate burden of persuading the trier of fact" that discrimination occurred remains with the complainant at all times. *Puetz Motor Sales*, 126 Wis. 2d at 172–73, 376 N.W.2d at 374. Certainly, no Wisconsin case to date has required an employer to persuade the fact finder by the greater weight of the evidence that its reasons for a personnel decision were non-discriminatory. LIRC relied on *Puetz Motor Sales* and similar cases for its conclusion that Wisconsin law has already established that the burden of proving discrimination under the WFEA rests squarely upon the complainant, even after a *prima facie* case has been established. This court has no doubt that LIRC's conclusion is a reasonable interpretation of the WFEA *standing alone*; the questions we must now answer are whether such an interpretation is contrary to the clear meaning of § 903.01, STATS., and whether the agency was bound to apply that statute.

Under § 903.01, STATS., of the Wisconsin Rules of Evidence, a presumption shifts the burden of persuasion for the existence of some fact:

> **Presumptions in general.** Except as provided by statute, a presumption recognized at common law or created by statute, including statutory provisions that certain facts are *prima facie* evidence of other facts, imposes on the party relying on the presumption the burden of proving the basic facts, but once the basic facts are found to exist the presumption imposes on the party against whom it is directed the burden of proving that the nonexistence of the presumed fact is more probable than its existence.

In contrast, under the Federal Rules of Evidence, a presumption is merely "a device for allocating the pro-

duction burden." *Burdine* at 256 n.8; FED. R. EVID. 301. Thus, the *prima facie* case of a complainant raises an inference of discrimination only because the fact finder presumes those acts, if otherwise unexplained, are more likely than not based on the consideration of impermissible factors. Stated another way, the establishment of the *prima facie* case simply creates a presumption that the employer unlawfully discriminated against the employee and if the employer then remains silent, the fact finder must enter judgment for the complainant because no issue of fact remains in the case.

However, the appellants contend that Wisconsin's statutory statement of the effect of a presumption requires completely shifting the burden of proof to the employer in state law cases, once a *prima facie* case has been made. We agree with the appellants that § 903.01, STATS., presumptions produce a different evidentiary effect in Wisconsin than presumptions do under federal law. *See* Judicial Council Committee's Note, 1974, § 903.01. However, we note that § 903.01 merely describes how presumptions work in Wisconsin; it does not determine when a party is entitled to a presumption. Therefore, before shifting the burden of persuasion in a WFEA action, we must determine whether or not a *prima facie* case of discrimination raises "a presumption recognized at common law or created by statute," within the meaning of § 903.01.

The parties do not claim that Wisconsin has created any presumption of discrimination by statute. Therefore, the only possible authority for the existence of such a presumption in this state would lie in those cases which have adopted the federal framework discussed above, some of which specifically state that "a *prima facie* case . . . raises a presumption of discrimina-

tion." *See, e.g., Puetz Motor Sales*, 126 Wis. 2d at 172, 376 N.W.2d at 374. Looked at in isolation, such statements do tend to support the appellants' contention. However, taken in the context of the cases in which the statements were made, it becomes clear that the appellants are relying on cases which actually stand for the proposition that a *prima facie* case triggers an intermediate burden of production for the employer, rather than completely shifting the burden of persuasion on the ultimate issue of discrimination to the employer.

The flaw in the appellants' reasoning lies in their assumption that our cases which use the word "presumption" by reference to federal case law, adopt the function set out in § 903.01, STATS., rather than the function given to a presumption under federal cases. But statements to the effect that an employer need only "produce admissible evidence which would allow the trier of fact rationally to conclude that the employment decision had not been motivated by discriminatory animus," *Kovalic,* 161 Wis. 2d at 875, 469 N.W.2d at 229 (Ct. App. 1991), and that the employee "still carries the ultimate burden of proving discrimination," *id.,* clearly mean the contrary: that Wisconsin has adopted the rule that a *prima facie* case will trigger a burden of production for the employer, but, unless the employer remains silent in the face of that *prima facie* case, the complainant continues to bear the burden of proof on the ultimate issue of discrimination. Additionally, nothing in § 903.01 suggests that the legislature intended to abolish all intermediate burdens of production. And finally, § 903.01 is a statutory rule of evidence, which § 227.45(1), STATS.,[5] provides shall not

---

[5] Section 111.395, STATS., directs that the provisions of Chapter 227 apply to a review of the findings and conclusions

bind the hearing examiner in fact finding hearings for claims such as age and sex discrimination.

## Sufficiency of the Evidence.

Appellants claim that the record does not support LIRC's findings that none of their terminations resulted from discriminatory motives. However, the record shows that Garrow Oil's Friendship store had a significant shrinkage problem. Sorenson and Meinhardt admitted as much when they testified, and Sorenson further acknowledged that the problem could have supplied a valid basis for her termination. We will not substitute our judgment as to whether that shrinkage problem was in fact the motivation behind Sorenson's termination because there was evidence upon which a reasonable person could conclude that that was the case.

Meinhardt and Currie argue that Garrow Oil failed to articulate or produce evidence of a legitimate reason for their firing. However, Garrow Oil's denial that it fired those two women did create a genuine issue of fact as to whether discrimination occurred. Therefore, the burden shifted back to these employees to show that Garrow Oil's story that it had not discharged them was a pretext for discrimination. This required more than a showing that the proffered explanation was a pretext; it required a nexus between the pretext and the discrimination. *Kovalic*, 161 Wis. 2d at 876, 469 N.W.2d at 230 (applying the ADEA). The record supports LIRC's finding that the employees failed to introduce comparative evidence of Garrow

which result from the hearing held on a discrimination complaint.

Oil's treatment of male managers with similar shrinkage problems, or of other employees whose managers were fired. Garrow Oil hired and fired both men and women during Davis' tenure, and despite some indication that Davis' attitude toward women was less accepting than his attitude toward men, LIRC was not compelled to find that gender or age discrimination motivated the personnel changes at the Friendship store.

## CONCLUSION

LIRC properly determined that the burden of persuasion on the question of a discriminatory motive for an employer's actions under WFEA remains with the employee, even after a *prima facie* case has shifted the burden of production to the employer to show a nondiscriminatory motive. Moreover, under § 227.45(1), STATS., LIRC was not required to apply § 903.01, STATS. And furthermore, to do so in the manner sought here would result in the inconsistent treatment of federal and state law employment discrimination claims, when LIRC and Wisconsin courts have moved toward a uniform treatment of those claims by specifically following the order of proof used in federal cases. Finally, LIRC's findings that sex and age discrimination were not the motivating factors behind Garrow Oil's terminations of Sorenson, Meinhardt and Currie were supported by substantial and credible evidence of inventory problems at the store.

*By the Court.*—Order affirmed.